IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 12, 2006

**STATE OF TENNESSEE v. ROBERT WEAVER**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-01203     Chris Craft, Judge**

_____

**No. W2005-02888-CCA-MR3-CD  - Filed January 4, 2007**

_____

Following a jury trial, Defendant, Robert Weaver was convicted of one count of robbery, a Class C felony. The trial court sentenced Defendant as a Range II, multiple offender, to ten years. Defendant does not appeal the length of his sentence. Defendant argues, however, that the evidence was insufficient to support his conviction. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Robert Wilson Jones, District Public Defender; Trent Hall, Assistant Public Defender; and Sandra R. DiMaggio, Assistant Public Defender, Memphis, Tennessee, for the appellant, Robert Weaver.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michelle Parks, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Ellen Baker, a sales manager with Cricket Communications, returned to her office on Elmore Street in Memphis at approximately 1:30 p.m. on March 18, 2004, after a lunch break. Ms. Baker testified that a Dodge Intrepid pulled into the parking lot one space down from her parking spot. Ms. Baker got out of the car and began walking towards the office building carrying a package, a cell phone, a DayTimer, and her purse. The occupants of the car came up behind Ms. Baker, and one of the three men placed something against her back. Ms. Baker described the item "as a hard substance" that "felt like metal." One of the men said, "Give it up, lady." The men began grabbing for her possessions, and Ms. Baker screamed. Two of the men ran toward the Intrepid while the

third man, whom Ms. Baker identified at trial as Defendant, continued to struggle with Ms. Baker over her purse. Ms. Baker let go of the purse, and it flew over Defendant's head. Defendant retrieved the purse, "picked up a couple of things that had fallen from the purse," and jumped into the Intrepid's back seat.

Ms. Baker said that the incident was "very scary," and she was afraid she was going to die because she thought the men were armed. Ms. Baker was shown a photographic line-up after the incident, and she identified Defendant as her assailant. Ms. Baker said that the only item that was recovered was her cell phone and two keys which had broken off from her key chain during the struggle. She said her cell phone number was 859-0100.

On cross-examination, Ms. Baker said that she could not identify the other two men involved in the incident. Ms. Baker said that her purse contained credit cards and checks. Three checks, each in the amount of $1,500, were cashed at nearby casinos in Mississippi after the incident.

Brian Bender, an account manager for Cricket Communications, heard Ms. Baker scream and he ran into the office's reception area. Mr. Bender testified that he observed Ms. Baker struggling with a man over her purse. Mr. Bender identified Defendant at trial as Ms. Baker's assailant. Mr. Baker said that the purse flew out of Ms. Baker's hand. Defendant picked up the purse, looked in Mr. Bender's direction, and then jumped in the back seat of a Dodge Intrepid. Mr. Bender said that he identified Defendant from a photographic line-up as the person who had taken Ms. Baker's purse. Mr. Bender said that he and Ms. Baker memorized the license plate number of the Intrepid and relayed that information to the investigating officers.

Carla Bragg testified that she rented a 1997 Dodge Intrepid shortly before the incident for her friend, Wanda Carruthers, because Ms. Carruthers was not employed. Sergeant Scott Wright, with the Shelby County Sheriff's Department, testified that the Dodge Intrepid was registered to River City Car Rental. Ms. Carruthers' address was obtained from the rental agreement, and the Intrepid was subsequently discovered parked outside Ms. Carruthers' residence about two hours after the incident.

Detective Jonas Holguin, with the Memphis Police Department, interviewed Ms. Carruthers. Ms. Carruthers was in possession of Ms. Baker's cell phone when she was picked up for the interview. Ms. Carruthers stated that she had loaned the Intrepid to Defendant prior to 2:00 p.m. on the day of the incident and disclosed the names of the other men involved in the robbery.

Sergeant Dexter Moses, with the Memphis Police Department, testified that the investigating officers could only locate Defendant. Defendant was read his *Miranda* rights and executed a written waiver. Defendant's statement was read to the jury. Defendant acknowledged that he participated in the robbery in front of the Cricket Communications facility, but he denied that he was armed. Defendant said that he was accompanied by two men named Johnny and "T." The three men were in a gray Dodge Intrepid which they had borrowed from Ms. Carruthers. Defendant provided the following description of the incident in his statement:

We rode around for awhile, and we pulled into the parking lot at Cricket, and Johnny said, there she go, and pulled up fast. "T" jumped out, I got out and ran up to the woman. "T" was grabbing her bag and purse, and she dropped the phone. I picked up the phone, then the purse fell. "T" got the bag from the woman and we ran and picked up the purse as we ran.

We jumped in the car and took off. We went back to Wanda's house, and "T" and Johnny gave the purse to Wanda. Wanda was looking through the purse and looking at the credit cards and the purse. There was a white couple at Wanda's and she looked at the driver's license and said she could pass for [Ms. Baker.]

Defendant said in his statement that he committed the robbery because he "was high and wanted some more to stay high." Defendant said that the only thing he received from the stolen items was Ms. Baker's cell phone, and he sold the cell phone to Ms. Carruthers for ten dollars.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his conviction for robbery, that at most he is guilty of the lesser offense of facilitation of robbery. Defendant contends that Ms. Carruthers orchestrated the robbery, and that he was merely following her orders.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The offense of robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103. Viewing the evidence in a light most favorable to the State, Ms. Baker testified that Defendant and two other men approached her in the parking lot and grabbed the items she was carrying from

her possession.  One of the men pressed something against Ms. Baker's back which Ms. Baker believed to be a gun.  Ms. Baker identified Defendant as the individual who took her purse.  Ms. Baker described the incident as "very scary" and thought she was going to die.  The jury was provided with an instruction on facilitation as a lesser included offense of robbery.  By its verdict, the jury obviously rejected Defendant's contention that he was not a principal actor during the commission of the offense, as was its prerogative.  Based on our review of the record, we conclude that a rational trier of fact could find beyond a reasonable doubt that Defendant was guilty of the offense of robbery.  Defendant is not entitled to relief on this issue.

## CONCLUSION

After review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE